UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RAFAEL URENA,

                              Plaintiff,

                                                                 9:08-CV-1309
v.                                                               (NAM/GHL)

BRIAN FISCHER, SGT. ARMSTRONG,

                              Defendants.
_____

APPEARANCES:                                       OF COUNSEL:

RAFAEL URENA
Plaintiff *pro se*
25-17 85th Street
E. Elmhurst, New York 11370

HON. ANDREW M. CUOMO                    CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the State of New York
  Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

**REPORT-RECOMMENDATION**

      This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Rafael Urena alleges that Defendants Brian Fischer and Sergeant Armstrong failed to protect him from an attack by another inmate and violated his procedural due process rights at the disciplinary hearing that followed the attack. Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 34.)

Plaintiff has opposed the motion.  (Dkt. No. 35.)  For the reasons that follow, I recommend that Defendants' motion be granted.

I.      FACTUAL AND PROCEDURAL SUMMARY

Plaintiff alleges that on November 28, 2006, he was eating breakfast when inmate Nichols sat down next to him and asked him if he was a rapist.  (Dkt. No. 1 at 10.)  When Plaintiff replied that he was in the sexual offender program, inmate Nichols "immediately . . . got up and started pounding me with his fists and then with a glasses-tray holder."  *Id*.  Plaintiff "hit the floor semi-conscious" and inmate Nichols hit him on the head, arms, and legs as he was lying there.  *Id*. at 11.  Plaintiff alleges that Defendants "failed to protect [him] from [this] forseeable attack . . . [T]here were enough [o]fficers to prevent Plaintiff from being injured, yet for no apparent reason the defendants decided to do nothing to prevent Plaintiff from sustaining serious injuries . . . ."  *Id*. at 5.

After the incident, Defendant Armstrong filed a misbehavior report charging Plaintiff with creating a disturbance and fighting.  (Dkt. No. 1 at 8.)  On December 4, 2006, Lt. Santos (who is not a defendant in this action) conducted a Tier II disciplinary hearing regarding the report.  *Id.*  Plaintiff alleges that his due process rights were violated at this hearing when "defendants used false statements to falsely accuse Plaintiff of trump[ed] up testimonies . . . Plaintiff was deprived of contacting witnesses and evidence was omitted which could have had a different outcome . . . ."  *Id.* at 6.  Lt. Santos found Plaintiff guilty of both charges and sentenced him to 30 days' keeplock and loss of privileges.  (Dkt. No. 1 at 8.)

Plaintiff appealed his disciplinary sentence to the superintendent of his facility.  (Dkt. No. 1 at 10.)  The appeal was denied because Plaintiff "present[ed] no technical errors with [his]

2

hearing [and his] only question [wa]s one of credibility." *Id*.

Plaintiff alleges that he exhausted his administrative remedies before filing this action. (Dkt. No. 1 at 5-6.) Attached to Plaintiff's complaint are several exhibits involving various grievances that he filed. The topic of each grievance is not clear from the exhibits because Plaintiff has included only portions of the grievances. Several of the exhibits involve grievances that predate the incident with inmate Nichols. For example, one exhibit shows that on October 5, 2006, Plaintiff filed a grievance complaining that he had only two showers during twenty-two days in the SHU. (Dkt. No. 1 at 17-18.) On November 14, 2006, Plaintiff disagreed with the IGRC response to Grievance No. ONI-9756 and appealed to the superintendent of the facility. A note on the top of this form states that "disciplinary and time allowance committee proceeding[s] are non-grievable issues." (Dkt. No. 1 at 16.)

Some of the exhibits attached to the complaint involve grievances that were pursued after the incident with inmate Nichols, but again it is not clear what topics these grievances involved. On November 30, 2006, Plaintiff disagreed with a response to Grievance No. ONI-9757 and appealed to the superintendent. (Dkt. No. 1 at 15.) Plaintiff wrote a letter to the Inspector General's office dated December 7, 2006. It was referred to the superintendent for further action. (Dkt. No. 1 at 9.) On April 30, 2007, Plaintiff disagreed with a response to Grievance No. MCY 1256-07 and appealed to the superintendent. (Dkt. No. 1 at 14.)

Plaintiff filed his complaint in this action on December 4, 2008. (Dkt. No. 1.)

Defendants' evidence shows that on December 5, 2008, Plaintiff submitted a "late grievance" to the grievance director of Oneida Correctional Facility regarding Defendant Armstrong's alleged failure to protect him from the attack by inmate Nichols. (Dkt. No. 34-10 at

3

5.)  Plaintiff stated that he had not filed an earlier grievance because he went into protective custody on November 28, 2006, and then transferred to Marcy Correctional Facility.  He was afraid of retaliation if he filed a grievance and he believed that three previous grievances (Nos. ONI-9756, ONI-9757, and ONI 9734) were sufficient to cover the issues.  (Dkt. No. 34-10 at 5.) I note that at least two of the grievances to which Plaintiff refers - ONI-9756 and ONI-9734 - were filed prior to the incident with inmate Nichols.

>   On December 9, 2008, a supervisor replied that:
>
>> Grievance ONI-9734 was dismissed and closed by the IGRC on 10/19/06.  Your request to re-open the grievance was denied by the IGP Supervisor on 11/7/06.  You failed to file a grievance that your grievance was not re-opened.  This grievance can not be re-opened and appealed to the Superintendent.  Grievance ONI-9757 was dismissed and closed by the IGRC on 11/30/06.  You failed to apply to the IGP Supervisor for review of the dismissal.  This grievance can not be re-opened and appealed to the Superintendent. Your complaint dated 12/5/08 regarding issues which allegedly occurred in November 2006 can not be filed as a grievance.  In accordance with Directive 4040, inmates must file a complaint within 21 days of the alleged occurrence.  Exceptions to this time limit can not exceed 45 days. Your complaint is over 2 years old and can not be filed as a grievance.

(Dkt. No. 34-10 at 4.)

Plaintiff appealed the December 9, 2008, decision to the superintendent of Oneida.  (Dkt. No. 34-10 at 3.)  The superintendent did not respond.  On January 5, 2009, Plaintiff appealed the lack of a decision to Karen Bellamy, the director of the inmate grievance program.  (Dkt. No. 34-10 at 2.)  On January 27, 2009, Ms. Bellamy replied that an "inmate may pursue a complaint that the IGP Supervisor failed to reinstate an improperly dismissed grievance by filing a separate grievance.  Such must be done in a timely manner, and your grievances, now untimely, were filed

in 2006." (Dkt. No. 34-10 at 1.)

Plaintiff's grievance history shows that he did not pursue any grievances to the CORC level of review, discussed in more detail below, from March 2005 through April 2007. (Dkt. No. 34-9 at 1.)

Defendants now move for summary judgment, arguing that (1) Plaintiff did not exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"); (2) none of the named Defendants were personally involved in the alleged due process violations at Plaintiff's disciplinary hearing; and (3) Plaintiff has failed to state a failure-to-protect cause of action. (Dkt. No. 34-2.) Plaintiff has opposed the motion.[1] (Dkt. No. 35.)

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). The nonmoving party must do more than "rest upon the mere allegations . . . of [the plaintiff's] pleading" or "simply show that there is some

---

[1] Plaintiff's opposition states that he is now out of prison, homeless, and quite ill and has thus been unable to properly pursue this action.

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 309 (2d Cir. 2008).

### B. Legal Standard Governing Motion to Dismiss for Failure to State a Claim

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) [citations omitted]; *accord*, *Katz v. Molic*, 128 F.R.D. 35, 38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.

---

[2] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

### III. ANALYSIS

#### A. Defendants' Failure to File a Statement of Material Facts

Local Rule 7.1(a)(3) requires parties moving for summary judgment to file and serve a Statement of Material Facts. This statement "shall set forth, in numbered paragraphs, each

material fact about which the moving party contends there exists no genuine issue." Facts that are not in the Statement of Material Facts need not be considered. *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000). The rule thus puts the onus on the parties to marshal the evidence that supports the motion. *Id*. A district court has no duty to perform an independent review of the record to find proof of either a factual dispute or the lack of a factual dispute. *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir.2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."); *accord, Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371-72 (N.D.N.Y. 2003). "Our District's requirements are not empty formalities. Rules such as L.R. 7.1(a) 'serve to notify the parties of the factual support for their opponent's arguments, but more importantly inform the court of the evidence and arguments in an organized way-thus facilitating its judgment of the necessity for trial.'" *Jackson v. Broome County Corr. Facility,* 194 F.R.D. 436, 437 (N.D.N.Y.2000) (*citing Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995)). Local Rule 7.1(a)(3) clearly states that the "[f]ailure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." (Emphasis in original.)

   Here, Defendants did not file a Statement of Material Facts. However, in the interest of judicial efficiency and because the evidence in this case is not voluminous, I have performed an independent review of the record. Defendants are cautioned, however, that in future cases involving a more complex evidentiary record, the failure to file a Statement of Material Facts will result in automatic denial of the motion.

B.      **Exhaustion of Administrative Remedies**

Defendants argue that this action must be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the PLRA. (Dkt. No. 34-2 at 4-5.) Defendants are correct as to Plaintiff's failure-to-protect claim.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007). In New York state prisons, the Department of Correctional Services ("DOCS") has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7 (2010).

Generally, the DOCS Inmate Grievance Program ("IGP") involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a) (2010). A representative of the facility's inmate grievance resolution committee ("IGRC") has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at (b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance, and issues a written

decision within two working days of the conclusion of the hearing. *Id.* at (b)(2).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. If the grievance involves an institutional issue (as opposed to a DOCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. Grievances regarding DOCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the process applicable to the third step. *Id.* at (c).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. at (d).

An inmate may seek an extension of the time limits in writing at any of the steps, but such a request must be made within forty-five days of the incident being grieved or the decision being appealed. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2010). If an inmate believes that an extension was wrongly denied, he may file a separate grievance protesting the denial. *Id*.

Any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2010).

If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81 (2006).

DOCS has a separate and distinct administrative process for inmates to appeal the result of disciplinary hearings, which is not referred to as a "grievance" process. In fact, the regulations

specifically state that the results of disciplinary hearings are "non-grievable." N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3(e)(1)-(2) (2010). For Tier II disciplinary hearings, the appeal is to the facility superintendent. N.Y. Comp. Codes R. & Regs. tit. 7, § 253.8 (2010). An inmate's appeal of a disciplinary hearing decision "constitutes exhaustion under the PLRA for purposes of rendering his due process claim ripe for adjudication in federal court." *Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009).

Here, the evidence before the Court indicates that Plaintiff properly exhausted his administrative remedies regarding the conduct of his disciplinary hearing by appealing Lt. Santos' decision to the superintendent. Therefore, I recommend that the Court reject Defendants' argument that Plaintiff failed to exhaust his administrative remedies regarding this claim.[3]

Plaintiff did not exhaust his administrative remedies regarding his allegation that Defendant Armstrong failed to protect him from the attack by inmate Nichols. As noted above, Plaintiff's grievance history shows that he did not receive any decisions from CORC from March 2005 through April 2007. (Dkt. No. 34-9 at 1.) Even if one assumes that Plaintiff pursued a grievance to the CORC level but did not receive a response (an assumption that has no basis in the record), this would still mandate a finding that Plaintiff failed to exhaust. If a prisoner appeals to CORC but does not receive a decision, he has failed to exhaust his administrative remedies. *See Mendez v. Artuz*, No. 01 CIV. 4157, 2002 U.S. Dist. LEXIS 3263, at * 4, 2002 WL 313796, at * 2 (S.D.N.Y. Feb. 27, 2002).

Plaintiff's failure to exhaust, however, does not end the inquiry. The Second Circuit has

---

[3] Because the PLRA does not impose a "total exhaustion" rule mandating that exhausted claims be dismissed if they are included in the same action as unexhausted claims (*Jones*, 549 U.S. at 223-24), I will address the claim on its merits in Section III(C) below.

held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).[4]

First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. (citations and internal quotations omitted).

Here, as discussed above, an administrative remedy was available to Plaintiff. Defendants have not forfeited and are not estopped from asserting the exhaustion defense. Defendants asserted the defense in their answer. (Dkt. No. 17 ¶ 11.) Plaintiff has not alleged or raised a triable issue of fact that Defendants engaged in conduct that hindered Plaintiff's ability to pursue his or her administrative remedies*. Ziemba v. Wezner*, 366 F.3d 161, 162-63 (2d Cir. 2004)(district court directed to consider whether defendants were estopped from asserting exhaustion defense where inmate alleged that he was beaten, threatened, denied grievance forms,

---

[4] The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford*, 548 U.S. 81. *Chavis v. Goord*, No. 07-4787-pr, 2009 U.S. App. LEXIS 13681, at *4, 2009 WL 1803454, at *1 (2d Cir. June 25, 2009).

and transferred to another prison). Although Plaintiff stated in his December 5, 2008, letter (written the day *after* he filed this action) that he feared retaliation if he filed a grievance, he has not alleged facts plausibly suggesting, or produced evidence raising a triable issue of fact, that Defendants threatened him with such retaliation. Finally, Plaintiff's failure to exhaust administrative remedies was not justified. Justification "must be determined by looking at the circumstances which might understandably lead . . . uncounselled prisoners to fail to grieve in the normally required way." *Giano v. Good*, 380 F.3d 670, 678 (2d Cir. 2004). Although Plaintiff asserted in his December 5, 2008, letter that he did not file a grievance because he was in protective custody and transferred to a new facility, the attachments to the complaint show that he filed grievances and appeals on several dates in the months after the incident. Therefore, I recommend that Plaintiff's failure-to-protect claim be dismissed for failure to exhaust administrative remedies.

    **C.**    **Due Process Claim**

Defendants argue, in a footnote, that they are entitled to summary judgment of Plaintiff's procedural due process claim because neither Defendant Armstrong nor Defendant Fischer was personally involved with the disciplinary hearing. (Dkt. No. 34-2 at 3 n. 2.) Defendants are correct. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Here, Plaintiff alleges, and the evidence shows, that Lt. Santos

13

conducted the disciplinary hearing. Any procedural defects in the hearing, therefore, were the responsibility of Lt. Santos, not of Defendants Armstrong or Fischer. Therefore, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's procedural due process claim.

### D. Failure to Protect Claim

As discussed above, Plaintiff's failure-to-protect claim should be dismissed because Plaintiff failed to exhaust his administrative remedies. However, I will address the merits of the claim for the sake of completeness. Defendants argue that Plaintiff cannot establish either the objective or the subjective prong of his failure-to-protect claim. (Dkt. No. 34-2 at 5-8.) Defendants are correct.

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation and punctuation omitted). A prison official's failure to protect an inmate from such violence violates the Eighth Amendment where (1) objectively, the inmate was "incarcerated under conditions posing a substantial risk of serious harm"; and (2) subjectively, the prison official acted with "deliberate indifference" to the inmate's safety. *Id*. at 834.

Plaintiff has not alleged facts plausibly suggesting, or produced evidence raising a triable issue of fact that, he was incarcerated under conditions posing a substantial risk of serious harm. Such conditions can be shown by evidence that an inmate had a previous altercation with his attacker and has complained about the incident or has requested separation from the attacker. *Desulma v. City of New York*, No. 98 Civ. 2078, 2001 U.S. Dist. LEXIS 9678, at *21, 2001 WL

798002, at *6 (S.D.N.Y. July 6 2001).[5]  Here, there is no evidence that Plaintiff had any previous encounters with inmate Nichols or that there was any indication that inmate Nichols was predisposed to attack prisoners serving sentences for sex offenses.  Therefore, I find that Plaintiff cannot establish the objective prong of his failure-to-protect claim and I recommend that the Court grant Defendants' motion for summary judgment.

Even if Plaintiff could establish the objective prong of his claim, his claim would be subject to dismissal because he has not alleged facts plausibly suggesting, or produced evidence raising a triable issue of fact, that Defendants Fischer or Armstrong acted with deliberate indifference.  A prison official demonstrates deliberate indifference where he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer* 511 U.S. at 837.  As for Defendant Fischer, there is no indication that he was personally involved in this incident at all.  As for Defendant Armstrong, Plaintiff has not alleged facts plausibly suggesting, or produced evidence raising a triable issue of fact, that he was either aware of facts from which he could draw the inference that inmate Nichols might attack Plaintiff or that he drew that inference.  Therefore, even if Plaintiff had properly exhausted his administrative remedies and raised a triable issue of fact as to the objective prong, I would recommend that the Court grant Defendants' motion for summary judgment.

**ACCORDINGLY**, it is

---

[5] Defendants served a copy of this unpublished opinion on Plaintiff with their moving papers.  (Dkt. No. 34-4.)

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 34) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: April 16, 2010
  Syracuse, New York

_____
George H. Lowe
United States Magistrate Judge